*Law Office of*
**RICARDO BOURS**
100 N. Stone Avenue, Suite 601
Tucson, Arizona 85701
Telephone: (520) 514-0766
Facsimile:(520) 514-0499
Az. State Bar No. 021583
Attorney for Defendant

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | NO: CR22-00402 –JCH-1 |
| Plaintiff, | |
| vs. | **DEFENDANT'S SENTENCING MEMORANDUM** |
| Jorge Luis Calderon, | |
| Defendant. | Sentencing Date: August 22, 2022 |

COMES NOW, Defendant JORGE LUIS CALDERON, by and through counsel undersigned, and hereby submits his Sentencing Memorandum requesting that this Honorable Court consider all relevant factors and impose a just sentence. The legally pertinent details are more fully set forth in the following Memorandum.

RESPECTFULLY SUBMITTED this 25th day of July 2022.

LAW OFFICE OF RICARDO BOURS

*s/Ricardo Bours*
Ricardo Bours, Attorney for Defendant

1

**MEMORANDUM**

**A.  Factual/Procedural History:**

On February 2, 2022, U.S. Border Patrol agents observed two suspected undocumented individuals near Lukeville, Arizona.  Mr. Calderon, a forty-eight (48) year old citizen of Nicaragua, was detained and arrested.  Upon apprehension, he readily admitted to being in the United States without legal authorization.  Immigration records reflect that he was last removed on November 14, 2012.  He was also ordered removed in February of 1998 and September of 2002.  The applicable Criminal History Category is I.

Mr. Calderon pleaded guilty to the Indictment charging him with violating 8 U.S.C. §§1326 (a), (b), Reentry of Removed Alien, a Class C Felony.  The parties entered a written Agreement, stipulating to a two-level downward departure and a custodial range of zero to six (6) months.  The Agreement precludes any additional guideline adjustments or departures.  However, it may be argued at sentencing that a downward variance is warranted based on the sentencing objectives in 18 U.S.C. §3553(a).  If Mr. Calderon is sentenced within the range stipulated to in the Plea Agreement, he waives all rights to appellate redress.

**B. Personal /Criminal Histories:**

Mr. Calderon grew up in Managua, Nicaragua.  He has one sibling and four half siblings.  He has not seen his father is twenty-five (25) years, and his mother, who resides in Nicaragua, has diabetes and swelling in her legs.  This condition requires medical care and medication.  Mr. Calderon's childhood was marred by poverty in a country with violent political unrest.  At only age thirteen (13) he was incarcerated in Nicaragua based

2

on his forced participation in "*Ninos Sandinistas.*"  This group consisted of children that were mandated to be armed in efforts to resist the Nicaraguan Resistance.  After being released at age fourteen (14), he entered the United States to escape the political fallout.  He lived in Miami for thirteen (13) years, Texas for two (2) years, and Georgia for one (1) year.  He obtained a high school diploma in Nicaragua and his primary language is Spanish but he understands some English.  While residing in this country, he worked as a residential painter and installed flooring.  In 2018, while living in Nicaragua, he received a welding certification.  Prior to the instant arrest, he was working as a taxi driver.

      He has a twenty-seven (27) year old son from a previous relationship.  After his relationship with his son's mother fell apart, he entered another relationship that resulted in a seventeen year old daughter.  His daughter lives with her mother in Nicaragua.  He remains financially responsible to support his minor daughter and his niece and a nephew because his sister's husband has died.  Mr. Calderon hopes to apply for asylum in this country, as he alleges that he is considered "an enemy of the government" back in Nicaragua.  He asserts that he returned to the United States due to the fact he had participated in political protests and he had filed a lawsuit against the government of Nicaragua alleging human rights violations.  While traveling on a bus to Sonora, Mexico, he claims that he and his traveling companion were kidnapped, taken to a ranch where their money and belongings were stolen and the two were forced to enter the United States.

Between 1991 and 1997, he sustained felony convictions related to a stolen vehicle and stolen vehicle parts. In 1993, he was convicted in Florida for aggravated assault, after punching a person during a pool table brawl. By 1997, he had been experimenting with drugs. He consequently sustained two (2) felony convictions for possessing cocaine. In 2007, he was again convicted of a cocaine-related felony offense for trying to purchase the drug from an undercover agent. He affirms that he no longer dabbles in drug use of any kind. As set forth above, the applicable Criminal History Category is I.

**C. Sentencing Guidelines:**

The Base Offense Level for violating 8 U.S.C. §1326(a) is eight (8). *See USSG §2L1.2(a).* Two (2) levels are deducted based on his acceptance of responsibility. *See USSG §§3E1.1(a ),(b).* The Total Offense Level is six (6), and as combined with a I Criminal History Category, the Guideline range of imprisonment is zero (0) to six (6) months. Also pursuant to the Guidelines, the Court may impose a term of one (1) to three (3) years of supervised release. *See USSG §5D1.2(a)(2).* Mr. Calderon respectfully asserts that any sentence longer than one equal to time served is too severe and results in a sentence greater than necessary to satisfy the sentencing objectives set forth in 18 U.S.C. §3553(a).

**D.  Mitigating Factors/Conclusion:**

The Presentence Report (herein after "PSR") recommends a time-served sentence.

4

As of sentencing, Mr. Calderon will have served two-hundred and one (201) days in federal custody. The factors set forth in 18 U.S.C. §3553(a) indicate that such a sentence is appropriate statutorily.

As set forth above and in the PSR, he after being deported in 2012, he remained outside of the United States for many years. As also stated in the PSR, "the defendant's criminal history is dated with his last conviction in 2012. In addition, the defendant reported he has not returned to the United States in approximately 10 years. In mitigation, the Court may consider the defendant's concerns for his safety in Nicaragua. He also claimed that he was kidnapped in Mexico and forced to enter the United States."

A U.S. travel advisory sets forth that people considering travel to Nicaragua should reconsider doing so due to limited healthcare availability and arbitrary law enforcement. *See* *https://travel.state.gov/content/travel/en/traveladvisories/traveladvisories/nicaragua-travel-advisory.html*. Travelers are advised to exercise increased caution in Nicaragua due to crime. The government of Nicaragua arbitrarily enforces laws for political reasons. Throughout the country, government officials and law enforcement target those opposed to the rule of President Ortega. "The government and its affiliated groups have been reported to:

Systematically target opposition figures (regardless of nationality), including former allies, political activists, business representatives, clergy, human rights advocates, and

5

advocates, and members of the press.

- Arbitrarily detain pro-democracy advocates.
- Prevent certain individuals from departing Nicaragua by air or land for political reasons."
- Arbitrarily seize and/or search private property including personal phones and computers for anti-government content.
- Arbitrarily detain individuals with unfounded charges of terrorism, money laundering, and organized crime for political motives.

In accordance with the above-referenced information regarding traveling to Nicaragua, it appears that the circumstances cited by Mr. Calderon in mitigation of his reentry into the country are very likely truthful and factual. The factual allegations may be established after Mr. Calderon makes his case for a claim of asylum. In any event, it is unnecessary to retain him in prison any longer. If the Court is concerned that he will return to the United States, it can impose a term of supervised release with a special condition that if you are deported, you must not reenter the United States without legal authorization.

**RESPECTFULLY SUBMITTED** this 25th day of July, 2022.

LAW OFFICE OF RICARDO BOURS

*s/Ricardo Bours*

Electronic Copies to:

Jennifer Berman, Assistant United States Attorney

Raquel M. H. Neal, U.S. Probation Officer